## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| TIFFANY TOTH GRAY; ALYSSA NOBRIGA; CARISSA ROSARIO; HEATHER RAE YOUNG; KIMBERLY COZZENS; LINA POSADA; JAIME EDMONDSON LONGORIA; LUCY PINDER; and CLAUDIA SAMPEDRO, | |
| Plaintiffs, | Civil Action No. 6:18-cv-1779-ORL-31-KRS _____ |
| - against - | |
| FLORIDA BEVERAGE CORPORATION d/b/a RACHEL'S NORTH MEN'S CLUB AND STEAKHOUSE d/b/a RACHEL'S NORTH d/b/a RACHEL'S CASSELBERRY, | **COMPLAINT** (Jury Trial Demanded) |
| Defendant. | |

## COMPLAINT

COME NOW Plaintiffs TIFFANY TOTH GRAY ("Gray"), ALYSSA NOBRIGA ("Nobriga"), CARISSA ROSARIO ("Rosario"), HEATHER RAE YOUNG ("Young"), KIMBERLY COZZENS ("Cozzens"), LINA POSADA ("Posada"), JAIME EDMONDSON LONGORIA ("Edmondson"), LUCY PINDER ("Pinder"), and CLAUDIA SAMPEDRO ("Sampedro") (collectively, "Plaintiffs" or "Models"), by and through undersigned counsel, and for their Complaint against Defendant FLORIDA BEVERAGE CORPORATION doing business as RACHEL'S NORTH MEN'S CLUB AND STEAKHOUSE also doing business as RACHEL'S NORTH also doing business as RACHEL'S CASSELBERRY (hereinafter, "Defendant" or "Rachel's") state as follows:

## INTRODUCTION

1.     Defendant has pirated the images, likeness and/or identity of each Plaintiff

Model for purely self-serving commercial purposes – to advertise, promote and market Defendant's own business interests on social media accounts owned, operated, hosted, or controlled by Defendant.

2.      At all times relevant to this action, Plaintiffs were and are the exclusive owners of all rights, title, and interest to their images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

3.      Defendant is an unapologetic, chronic and habitual infringer.

4.      Defendant did not negotiate for or purchase Plaintiffs' images.

5.      Defendant did not seek or obtain consent or authority to use Plaintiffs' images for any purpose.

6.      Plaintiffs did not agree, nor would Plaintiffs ever agree, to Defendant's use of their images, likeness and/or identity.

7.      Had Plaintiffs been afforded the opportunity to consider whether to consent and release rights as to the commercial use of their images, Plaintiffs would have promptly and unequivocally declined.

8.      Defendant's conduct is therefore misleading and deceptive by falsely representing that Plaintiffs are somehow affiliated with Defendant, have contracted to perform at and/or participate in events at Defendant's strip club, have been hired to promote, advertise, market or endorse the events and activities offered at Defendant's strip club, and/or that Plaintiffs have attended or will attend each event and have participated in or intend to participate in the activities advertised.

9.      Defendant's conduct is also injurious to Plaintiffs.

10.     Defendant circumvented the typical arms-length negotiation process

entirely and pirated the subject images. In doing so, **Defendant has utterly deprived Plaintiffs the right and ability to say "no."**

11.     Defendant has prevented Plaintiffs from engaging in arms-length negotiations regarding the terms and conditions of use of Plaintiffs' images, including the term of any release, remuneration per use, or the ability to decline the business opportunity entirely. In short, Defendant deprived Plaintiffs of the ability to protect their image, brand and reputation.

12.     In the end, Defendant gained an economic windfall by using the images of professional and successful models and actresses for Defendant's own commercial purposes, luring and enticing patrons worldwide to view the images and visit Defendant's strip club, without having to compensate Plaintiffs a single penny for such usage. Plaintiffs, however, sustained injury to their images, brand and marketability by shear affiliation with Defendant's strip club.

13.     Having operated a business in the adult entertainment and striptease industry, Defendant is well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendant's commercial benefit.

14.     By defaming and embarrassing Plaintiffs and associating Plaintiffs' images and likeness with Defendant's strip club, Defendant's conduct is not merely a misuse in connection with an innocuous brand or events.

## <u>PARTIES</u>

**A.  <u>Plaintiffs</u>**

15.     Given the multitude of violations harming numerous models, and the

similarity of misconduct from Defendant harming all models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations *presently known* into this single collective action on behalf of the following models:

16.     PLAINTIFF Gray is, and at all times relevant to this action was, a professional model and resident of Orange County, in the State of California.

17.     PLAINTIFF Nobriga is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

18.     PLAINTIFF Rosario is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

19.     PLAINTIFF Young is, and at all times relevant to this action was, a professional model and resident of Los Angeles County, in the State of California.

20.     PLAINTIFF Cozzens is, and at all times relevant to this action was, a professional model and resident of San Diego County, in the State of California.

21.     PLAINTIFF Posada is, and at all times relevant to this action was, a professional model and resident of Miami-Dade County, in the State of Florida.

22.     PLAINTIFF Edmondson is, and at all times relevant to this action was, a professional model and resident of Pinellas County, in the State of Florida.

23.     PLAINTIFF Pinder is, and at all times relevant to this action was, a professional model and actress and resident of the County of Hampshire, in the country of England, United Kingdom.

24.     PLAINTIFF, Sampedro is, and at all times relevant to this action was, a professional model and resident of Miami-Dade County, in the State of Florida.

**B. Defendant**

25.     Based on publicly available records, and further upon information and belief, DEFENDANT Florida Beverage Corporation doing business as Rachel's North Men's Club and Steakhouse also doing business as Rachel's North also doing business as Rachel's Casselberry, is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 401 Semoran Boulevard, Casselberry, Florida 32707.

26.     DEFENDANT is an operator of a strip club that engages in the business of entertaining its patrons with nude and/or semi-nude dancing and alcohol.

27.     DEFENDANT operates a Facebook page, available at https://www.facebook.com/RachelsNorth/; a Twitter page, available at https://twitter.com/rachelsfl; an Instagram page, available at https://www.instagram.com/rachelsnorth/; and other social media accounts and websites through which it advertises its business, events, and parties. For many of these events, images of one or more of the PALINTIFFS were used to market and promote DEFENDANT'S events.

**JURISDICTION AND VENUE**

28.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have stated a claim under the Lanham Act, 28 U.S.C. § 1125(a)(1). This Court has supplemental jurisdiction over the Florida state law claims alleged herein pursuant to 28 U.S.C. § 1367.

29.     The Court has personal jurisdiction over Defendant based on its contact with the State of Florida, including but not limited to Defendant's registration to conduct business in Florida, its physical locations and principal places of business in Florida, and

upon information and belief, Defendant committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Florida.

30.     Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b) because Rachel's has its principal places of business in Seminole County, Florida and its acts giving rise to some the claims set forth herein occurred or originated in Seminole County, which is in the Middle District of Florida.

## FACTUAL BACKGROUND

**A.  Standard and Customary Business Practices in the Modeling and Acting Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Image**

31.     In the modeling and acting industry, reputation is critical.  Protection of a model or actor's reputation is therefore of paramount importance.

32.     Plaintiffs are professional models and actresses who earn a living by promoting their images and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on their reputation and own brand for modeling, acting, hosting, and other opportunities.

33.     Plaintiffs' careers in modeling, acting, and private enterprise have value stemming from the goodwill and reputation that they have built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

34.     Plaintiffs have worked to establish themselves as reliable, reputable and professional.

35.     Plaintiffs must necessarily be vigilant in protecting their "brand" from harm, taint, or other diminution.

36.     Any improper or unauthorized use of an image, likeness and/or identity could substantially injure the career and career opportunities of Plaintiffs.

37.     In the modeling and acting industry, models and actors such as Plaintiffs typically do not have a single employer, but rather work as independent contractors for different agents or entities.

38.     Plaintiffs are responsible professionals in the ordinary course. Plaintiffs seeks to control the use and dissemination of their image and, thus, actively participate in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

39.     Plaintiffs' vetting and selection of professional engagements involves a multi-tiered assessment, such as, but not limited to:

   a.  determining whether the individual or entity seeking a license and release of Plaintiffs' images, likeness and/or identity is reputable, has reputable products or services, and, through affiliation therewith, would either enhance or harm Plaintiffs' stature or reputation;

   b.  this reputational information is used in negotiating compensation which typically turns on the work Plaintiffs are hired to do, the time involved, travel and how their images are going to be used – known as "usage" (among other variables);

   c.  to protect their reputation and livelihood, Plaintiffs and/or their agents carefully and expressly define the terms and conditions of use;

   d.  the entire negotiated deal is reduced to and memorialized in an integrated, written agreement of limited duration (typically 1-3 years) which defines the parties' relationship. The terms and conditions of the agreement

typically, unless otherwise expressly delineated, bind and are applicable to only the parties to that agreement.

40.      Endorsing, promoting, advertising or marketing the "wrong" product, service or corporate venture, or working in or being affiliated with a disreputable industry can severely impact Plaintiffs' careers by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or magazines can enhance and amplify Plaintiffs' earning potential and career opportunities by making Plaintiffs more sought after and desirable.

**B.   Defendant has Misappropriated Plaintiffs' Images, Likeness and/or Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to Plaintiffs**

41.      As set forth below, Plaintiffs' images, likeness and/or identity have been misappropriated by or at the direction of Defendant.  Defendant's conduct creates the false and misleading appearance and impression that Plaintiffs either work for Defendant, have appeared and participated or will appear and participate in activities or events at Defendant's strip club, and/or have agreed and consented to advertise, promote, market or endorse Defendant's strip club or one or more Defendant's events or activities.

*Plaintiff Tiffany Toth Gray*

42.      Plaintiff Gray is, and all times relevant to this matter was, a model and actress. Gray was *Playboy*'s Miss September 2011 and has appeared in multiple *Playboy* television and movie productions as well as on *Jimmy Kimmel Live!, Tosh.O,* and *Dog Whisperer with Cesar Milan*. Gray has 220,000 followers on Twitter, more than 3,866,000 likes on Facebook, and 1,200,000 Instagram followers.

43.      In all instances of commercial marketing and promotion of her image,

likeness, or identity by third parties, Gray negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation

44.    DEFENDANT used stolen images of Plaintiff Gray to entice the public to visit its strip club. On or about March 5, 2015, Plaintiff Gray's image was used in a form of an advertisement to promote Rachel's "French Maid End of the Month Party." The image was posted to Defendant's Facebook page in a form of an event invitation and was also posted to Defendant employee's Instagram page. The image was used to advertise alcohol specials, #bottles, #badbitches, #gentlemen, #guys, and other hashtags.

45.    On or about August 27, 2015, a second image of Plaintiff Gray was used by Rachel's to promote its "What's Your Fantasy Thursdays" event. The image was also used to advertise alcohol specials as well as "Come See Your Favorite Girls Dresses in Costumes (Nurse, French Maid, Kitty Cats…)." Gray appears as the model on the right hand side of the advertisement. Both misappropriated images of Gray were used without her consent to intentionally give the impression that Gray is either a stripper working at Rachel's strip club or that she endorses Rachel's. *See* images of PLAINTIFF Gray attached hereto as **Exhibit A** which is incorporated herein by this reference.

46.    Gray has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

47.    Gray has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

48.    Defendant never sought permission or authority to use Gray's images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

49.     Gray never gave permission, or assigned, licensed or otherwise consented to Defendant using her images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

50.     At all times relevant to this action, Gray was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant.

51.     Defendant neither offered nor paid any remuneration to Gray for the unauthorized use of her images, likeness and/or identity.

52.     Defendant's use of Gray's images, likeness and/or identity in connection with Defendant's strip club impugns Gray's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

53.     Upon information and belief, Defendant's improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Gray's images in their market activities and business. In doing so, Defendant has further damaged Gray.

### *Plaintiff Alyssa Nobriga*

54.     Plaintiff Nobriga is, and at all times relevant to this action was, a model, a trained psychotherapist and a professional coach. Nobriga obtained her Masters degree in Clinical Psychology, specializing in Mind-Body Psychotherapy from The Chicago School of Professional Psychology and is currently on faculty at the University of Santa Monica where she holds a second Masters degree in Spiritual Psychology, with an emphasis on Consciousness, Health and Healing.  Nnobriga is also a graduate of The School for The Work, has extensive training in Imago Couples Therapy as well as an advanced

certification from the Hakomi Institute in mindfulness-based therapeutic practices and is certified as a Success Coach. Nobriga is a spiritual advisor for CEOs and senior executives, facilitates transformational group intensives and women's leadership and empowerment workshops and leads wellness retreats around the world centered on mindfulness and conscious living. Nobriga is a contributor to various publications such as *The Huffington Post*, *Positively Positive* and *The Daily Love* and is a featured expert on Deepak Chopra's YouTube channel. Nobriga has almost 29,000 Instagram followers, 34,000 likes on Facebook, and almost 9,000 followers on Twitter.

55.      In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Nobriga negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

56.      DEFENDANT used a stolen image of Plaintiff Nobriga to entice the public to visit its strip club. On May 3, 2015, Defendant posted to its Twitter page a stolen image of Nobriga as part of a "Cinco De Mayo" advertisement.  That image also included the caption "Sombreros, Tequila and Corona will be Flowing as the Beautiful Women of Rachel's Bring the Extra Spice to Your Cinco De Mayo!." The image was used without the consent of Nobriga to intentionally give the impression that Nobriga is either a stripper working at the strip club or that she endorses the strip club. *See* image of PLAINTIFF Nobriga attached hereto as **Exhibit B** which is incorporated herein by this reference.

57.      Nobriga has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

58.      Nobriga has never been hired by Defendant or contracted with Defendant to

advertise, promote, market or endorse Defendant's business or any of Defendant's events.

59.     Defendant never sought permission or authority to use Nobriga's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

60.     Nobriga never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

61.     At all times relevant to this action, Nobriga was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

62.     Defendant neither offered nor paid any remuneration to Nobriga for the unauthorized use of her image, likeness and/or identity.

63.     Defendant's use of Nobriga's image, likeness and/or identity in connection with Defendant's strip club impugns Nobriga's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

64.     Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Nobriga's image in their market activities and business. In doing so, Defendant has further damaged Nobriga.

### *Plaintiff Carissa Rosario*

65.     PLAINTIFF Rosario is, and at all times relevant to this action was, a successful model who has appeared in television commercials for Budweiser and Comcast. Rosario is also a spokesperson for Monster Energy Drinks, and Protein World, and has her

own perfume company line. She has also appeared in the pages of *GQ, FHM* and *Maxim* magazines. Rosario is well known in the social media world, with over 1,700,000 Facebook likes, 1,000,000 Instagram followers, and almost 50,000 Twitter followers.

66.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Rosario negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

67.     DEFENDANT Rachel's used a stolen image of Plaintiff Rosario to entice the public to visit its strip club. On September 15, 2015, Rachel's uploaded an image of Rosario to Rachel's Facebook page as an event invitation to promote and market its strip club's "Superhero Party.' The image was also used to promote "…Come see all your favorite Rachels North girls dresses as one of your favorite superheroes. We will have $5 Deep Eddy drinks until 11 and shot specials all night. We will have body painters on hand starting at 7 pm." Rosario appears as the model with dark hair. The image was used without the consent of Rosario to intentionally give the impression that Rosario is either a stripper working at the strip club or that she endorses the strip club. *See* image of PLAINTIFF Rosario attached hereto as **Exhibit C** which is incorporated herein by this reference.

68.     Rosario has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

69.     Rosario has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

70.     Defendant never sought permission or authority to use Rosario's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or

any of Defendant's events.

71.     Rosario never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

72.     At all times relevant to this action, Rosario was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

73.     Defendant neither offered nor paid any remuneration to Rosario for the unauthorized use of her image, likeness and/or identity.

74.     Defendant's use of Rosario's image, likeness and/or identity in connection with Defendant's strip club impugns Rosario's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

75.     Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Rosario's image in their market activities and business. In doing so, Defendant has further damaged Rosario.

### *Plaintiff Heather Rae Young*

76.     PLAINTIFF Young is, and at all times relevant to this action was, a model, who was chosen to be the "Playmate of the Month" in the February 2010 issue of the famous men's magazine, *Playboy*. Young has also worked as a swimsuit, glamor, and lingerie model and has been a spokes model for Captain Morgan, Smirnoff, Baileys, and Jose Cuervo, posed for both the 2010 Import Tuner calendar and the 2011 Fast Dates calendar, was featured in an ad campaign for the Affliction Clothing Line, and has modeled

for such clients as Calao Swimwear, DSO Eyewear, Carrie Amber Lingerie, Superstar Swimwear, and 7 Til Midnight Lingerie. Young made a guest appearance as Tina in "The Baby" episode of the comedy television series *Til Death*, in a Kia commercial in South Korea and in the popular television series, *Entourage*. Young has 418,000 followers on Instagram and 121,000 followers on Twitter.

77.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Young negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

78.     DEFENDANT Rachel's used stolen images of Plaintiff Young to entice the public to visit its strip club. On December 10, 2014, Young's image was uploaded to Rachel's Facebook page in a form of an event invitation. The same image was uploaded to Rachel's employee's Instagram page. Young appears as the second model from the right hand side of the advertisement. Young's image was specifically used to advertise "Ms. Clause Bikini Contest" event as well as a cash prizes contest.

79.     On March 2, 2015, another image of Young was used for advertising purposes by Rachel's on its Facebook page. The image also promoted "St. Patrick's Day Party" as well as alcohol specials at Rachel's strip club. Both images of Young were used without her consent and were employed to intentionally give the impression that Young is a stripper working at Rachel's strip club or that she endorses the strip club. *See* images of PLAINTIFF Young attached hereto as **Exhibit D** which is incorporated herein by this reference.

80.     Young has never been employed by Defendant or contracted with

Defendant to participate in events at Defendant's strip club.

81.     Young has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

82.     Defendant never sought permission or authority to use Young's images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

83.     Young never gave permission, or assigned, licensed or otherwise consented to Defendant using her images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

84.     At all times relevant to this action, Young was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant.

85.     Defendant neither offered nor paid any remuneration to Young for the unauthorized use of her images, likeness and/or identity.

86.     Defendant's use of Young's images, likeness and/or identity in connection with Defendant's strip club impugns Young's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

87.     Upon information and belief, Defendant's improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Young's images in their market activities and business. In doing so, Defendant has further damaged Young.

### *Plaintiff Kimberly Cozzens*

88.     PLAINTIFF Cozzens is, and at all times relevant to this action was, a model,

brand spokesperson, host, and actress with numerous accomplishments. As a model and brand spokesperson, Cozzens has appeared in dozens of international commercials and campaigns. She was featured in an Old Spice commercial that was one of the most highly sought after roles cast nationally. Cozzens has been featured in Sketchers advertising, appeared in a worldwide New Amsterdam vodka campaign, was the spokes model for La-Z-Boy furniture galleries and Martini Rossi liquor campaign with George Clooney, and modeled for Dodge automotive. Adweek rated the Dodge commercial featuring Cozzens as one of the best of the year. Cozzens has also appeared on the covers of *VIVA GLAM Magazine*, *Rangoni Magazine*, *Maxim*, and others.

89.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Cozzens negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

90.     DEFENDANT Rachel's used stolen images of Plaintiff Cozzens to entice the public to visit its strip club. On December 10, 2014, Cozzens' image was uploaded to Rachel's Facebook page in a form of an event invitation. The same image was uploaded to Rachel's employee's Instagram page. Cozzens appears as the second model from the left hand side of the advertisement. Cozzens' image was specifically used to advertise "Ms. Clause Bikini Contest" event as well as a cash prizes contest.

91.     On February 25, 2015, another image of Cozzens was used for advertising purposes by Rachel's on its Twitter page. The image was misappropriated to promote "Wild Wednesdays" events at Rachel's strip club as well as alcohol specials. Both images of Cozzens were used without her consent and were employed to intentionally give the

impression that Cozzens is a stripper working at Rachel's strip club or that she endorses the strip club. *See* images of PLAINTIFF Cozzens attached hereto as **Exhibit E** which is incorporated herein by this reference.

92.     Cozzens has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

93.     Cozzens has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

94.     Defendant never sought permission or authority to use Cozzens' images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

95.     Cozzens never gave permission, or assigned, licensed or otherwise consented to Defendant using her images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

96.     At all times relevant to this action, Cozzens was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant.

97.     Defendant neither offered nor paid any remuneration to Cozzens for the unauthorized use of her images, likeness and/or identity.

98.     Defendant's use of Cozzens' images, likeness and/or identity in connection with Defendant's strip club impugns Cozzens' character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

99.     Upon information and belief, Defendant's improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to

further utilize and misappropriate Cozzens' images in their market activities and business. In doing so, Defendant has further damaged Cozzens.

### *Plaintiff Lina Posada*

100.　PLAINTIFF Posada is, and at all times relevant to this action was, a fashion model and a fashion designer. Posada is best known for her appearances in the Bésame and Espiral Lingerie collection photo shoots and has modeled for Paradizia Swimwear, Babalú Swimwear, Irgus Swimwear, Ujeans, as well as many others. She has over 755,000 YouTube views, almost 6,000 Twitter followers, over 8,000 Facebook followers, and almost 95,000 Instagram followers.

101.　In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Posada negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

102.　DEFENDANT Rachel's used stolen images of Plaintiff Posada to entice the public to visit its strip club.

103.　On December 23, 2014 and December 31, 2014, Posada's image was uploaded to Rachel's Facebook page and Rachel's employee's Instagram page, respectively, to advertise Rachel's "New Years Eve 2015" event. The image was also used to promote Rachel's alcohol specials, food, admission prices, "VIP Service," party favors, and "Great specials & sexy women!"

104.　On June 12, 2015, another image of Posada was used for advertising purposes by Rachel's on its Facebook page. The image promoted "Game 5 | $25 All You Can Drink & Wings During The Game Upstairs in the VIP."

105.    On February 6, 2015, a third image of Posada was misappropriated by Rachel's and posted to its Facebook page to advertise its "Valentine's Day Lingerie Party & Dinner for Two & A Bottle of Champagne." All three images of Posada were used without her consent and were employed to intentionally give the impression that Posada is a stripper working at Rachel's strip club or that she endorses the strip club. *See* images of PLAINTIFF Posada attached hereto as **Exhibit F** which is incorporated herein by this reference.

106.    Posada has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

107.    Posada has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

108.    Defendant never sought permission or authority to use Posada's images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

109.    Posada never gave permission, or assigned, licensed or otherwise consented to Defendant using her images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

110.    At all times relevant to this action, Posada was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant.

111.    Defendant neither offered nor paid any remuneration to Posada for the unauthorized use of her images, likeness and/or identity.

112.    Defendant's use of Posada's images, likeness and/or identity in connection

with Defendant's strip club impugns Posada's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

113. Upon information and belief, Defendant's improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Posada's images in their market activities and business. In doing so, Defendant has further damaged Posada.

### *Plaintiff Jaime Edmondson-Longoria*

114. PLAINTIFF Edmondson is, and all times relevant to this lawsuit was, a model and an actress. As a former Miami Dolphins cheerleader, Edmondson appeared in *Playboy* magazine as Miss January 2010. Around the same time, Edmondson also appeared in several *Playboy* television shows and films, including *The Bunny House* and the reality show *The Girls Next Door* on the E! Network. Edmondson then appeared as a contestant in CBS's *The Amazing Race* during the fourteenth and eighteenth seasons. Edmondson has more than 93,000 Twitter followers and almost 15,000 Instagram followers.

115. In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Edmondson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

116. DEFENDANT Rachel's used stolen images of Plaintiff Edmondson to entice the public to visit its strip club. In January 21, 2015, two images of Edmondson were uploaded to Rachel's Facebook page to promote its "Super Bowl Party!." The images were also used to advertise "special giveaways," alcohol promotions and food specials. The images ere used without the consent of Edmondson to give the impression that Edmondson

is either a stripper working at the strip club or that she endorses the strip club. *See* images of PLAINTIFF Edmondson attached hereto as **Exhibit G** which is incorporated herein by this reference.

117.   Edmondson has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

118.   Edmondson has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

119.   Defendant never sought permission or authority to use Edmondson's images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

120.   Edmondson never gave permission, or assigned, licensed or otherwise consented to Defendant using her images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

121.   At all times relevant to this action, Edmondson was and is the exclusive owner of all rights, title, and interest to her images, likeness and/or identity unlawfully converted by Defendant.

122.   Defendant neither offered nor paid any remuneration to Edmondson for the unauthorized use of her images, likeness and/or identity.

123.   Defendant's use of Edmondson's images, likeness and/or identity in connection with Defendant's strip club impugns Edmondson's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

124.    Upon information and belief, Defendant's improper use of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Edmondson's images in their market activities and business. In doing so, Defendant has further damaged Edmondson.

### *Plaintiff Lucy Pinder*

125.    PLAINTIFF Pinder is, and at all times relevant to this lawsuit was, a successful glamour model, actress, host and a businesswoman. Pinder has been featured in publications such as *FHM* and *The Daily Star* and was one of *FHM*'s "100 Sexiest Women in the Word" from 2005 through 2007. Pinder has collaborated with major brands such as Unilever, Camelot, and others on large national and international advertising campaigns. Pinder also is an established actress with television and film credits including *I'm Famous and Frightened*, *Socc AM, Weakest Link, Nuts TV, MTV's TMF, Hotel Babylon, and Team and Bo!*. Pinder was also a contestant on *Celebrity Big Brother* and starred in *The Seventeenth Kind, Age of Kill*, and *Warrior Savitri*. Pinder has also worked with *Help for Heroes*, appearing in the *Hot Shots* fund raising calendar, supported male cancer awareness campaigns, took part in the MCAC London Strut awareness initiative, and visited American troops in Afghanistan in 2007. Pinder has over 1,423,000 Facebook followers, 503,000 Twitter followers, and 151,000 Instagram followers.

126.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Pinder negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

127.    DEFENDANT Rachel's used a stolen image of Plaintiff Pinder to entice the

public to visit its strip club. On April 10, 2015, Rachel's uploaded Pinder's image to its Facebook page to advertise Rachel's "VIP Tax Party Relief." The image was also misappropriated to advertise alcohol, food and admission specials at Rachel's strip club. The image was used without the consent of Pinder to intentionally give the impression that Pinder is either a stripper working at the strip club or that she endorses the strip club. *See* image of PLAINTIFF Pinder attached hereto as **Exhibit H** which is incorporated herein by this reference.

128.    Pinder has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

129.    Pinder has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

130.    Defendant never sought permission or authority to use Pinder's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

131.    Pinder never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

132.    At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

133.    Defendant neither offered nor paid any remuneration to Pinder for the unauthorized use of her image, likeness and/or identity.

134.    Defendant's use of Pinder's image, likeness and/or identity in connection

with Defendant's strip club impugns Pinder's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

135.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Pinder's image in their market activities and business. In doing so, Defendant has further damaged Pinder.

### *Plaintiff Claudia Sampedro*

136.    PLAINTIFF Sampedro is, and at all times relevant to this lawsuit was, a professional model and actress, who was featured in various magazine covers such as *Face 2 Face* magazine and *Mixed* magazine, has appeared in *Maxim*, *FHM* and *American Curves* and is about to launch her first line of fitness apparel. Sampedro also starred in the E! Reality show *WAGS Miami* and gained wide recognition as she appeared in the video "Don't Stop the Party" by Pitbull. Sampedro became engaged to Julius Peppers of the Carolina Panthers after she ended her very public relationship with Reggie Bush of the Buffalo Bills. Sampedro currently has 1,000,000 Instagram followers, almost 168,000 Facebook likes and and almost 160,000 Twitter followers.

137.    In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Sampedro negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

138.    DEFENDANT Rachel's used a stolen image of Plaintiff Sampedro to entice the public to visit its strip club. On June 16, 2015, Rachel's uploaded Sampedro's image to its Facebook page in a form of an event invitation to advertise Rachel's "Luau Party |

Pig Roast | $25 Buffet @ Rachel's," drink specials, food specials, and giveaways. The caption next to the image of Sampedro also provided, "Lots of beautiful ladies dresses in grass skirts and coconut bikinis." The image was used without the consent of Sampedro to intentionally give the impression that Sampedro is either a stripper working at the strip club or that she endorses the strip club. *See* image of PLAINTIFF Sampedro attached hereto as **Exhibit I** which is incorporated herein by this reference.

139.    Sampedro has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

140.    Sampedro has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

141.    Defendant never sought permission or authority to use Sampedro's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

142.    Sampedro never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

143.    At all times relevant to this action, Sampedro was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

144.    Defendant neither offered nor paid any remuneration to Sampedro for the unauthorized use of her image, likeness and/or identity.

145.    Defendant's use of Sampedro's image, likeness and/or identity in

connection with Defendant's strip club impugns Sampedro's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

146.    Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Sampedro's image in their market activities and business. In doing so, Defendant has further damaged Sampedro.

<u>CAUSES OF ACTION</u>

<u>COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

147.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects each Plaintiff from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

148.    At all times relevant to this action, each Plaintiff was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

149.    Defendant used each Plaintiff's image(s), likeness and/or identity as described herein without authority to create the perception that each Plaintiff worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's business and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's business and/or Defendant's events and activities.

150. Defendant's use of each Plaintiff's image(s), likeness and/or identity to advertise, promote and market Defendant's business and/or Defendant's events and activities as described in this Complaint was false and misleading.

151. Defendant's unauthorized use of each Plaintiff's image(s), likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that each Plaintiff worked at or was otherwise affiliated with Defendant, endorsed Defendant's business, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities and/or that each Plaintiff would participate in or appear at the specific events promoted in the advertisements.

152. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in its events, as well as specifically whether each Plaintiff worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities.

153. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Nobriga worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities. Among other things, upon information and belief, such unauthorized use misled and served

to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of customers and prospective customers and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

154. Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce. Specifically, Defendant promotes its business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally uses the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure attendance at Defendant's events.

155. Defendant's unauthorized use of each Plaintiff's image(s), likeness and/or identity as described herein was designed to benefit Defendant's business interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

156. Defendant knew or should have known that its unauthorized use of Plaintiffs' images, likeness and/or identity would cause consumer confusion as described in this Complaint.

157. Defendant's unauthorized use of each Plaintiff's image(s), likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

158. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

159. Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived each Plaintiff of a property interest, and further

acted with actual or constructive knowledge of the high probability that injury or damage would result to each Plaintiff.

160. The method and manner in which Defendant used the images of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that neither Plaintiff has consent to Defendant's use of their images to advertise Defendant's business.

161. Defendant has caused irreparable harm to each Plaintiff, Plaintiffs' reputation and brands by attributing to Plaintiffs the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

162. Defendant's unauthorized use of each Plaintiff's image(s), likeness and/or identity directly and proximately caused and continues to cause damage to Plaintiffs in an amount to be determined at trial.

**WHEREFORE**, each Plaintiff respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

163. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects each Plaintiff from the conduct described herein.

164. Defendant used each Plaintiff's image(s) to create the false impression with the public that each Plaintiff either worked at Defendant's strip club, or endorsed Defendant's business. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant. Thus, this was done in furtherance of

Defendant's commercial benefit.

165.    Each Plaintiff is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Plaintiffs' images in magazines and online.

166.    Both Plaintiffs and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

167.    As such, an unauthorized use of each Plaintiff's image(s) to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to each Plaintiff.

168.    Defendant's use of each Plaintiff's image(s), likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's advertisements are endorsed by each Plaintiff, or sponsored, approved or associated with each Plaintiff.

169.    Despite the fact that Defendant was at all times aware that neither Plaintiff has worked at, nor endorsed its strip club, nevertheless, it used each Plaintiff's image(s) to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant.

170.    Defendant knew that its use of Plaintiffs' images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's strip club.

171.    Upon information and belief, Defendant's use of each Plaintiff's image(s) did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement

of Defendant's business, and the goods and services provided by Defendant.

172. As a direct and proximate result of Defendant's actions, neither Plaintiff has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Plaintiffs' images, likeness and/or identity, or how Plaintiffs' images, likeness and/or identity are being depicted by Defendant.

173. Further, any failure, neglect or default by Defendant will reflect adversely on each Plaintiff as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote Plaintiffs' personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

174. Due to Defendant's unauthorized use of Plaintiffs' images, Plaintiffs have been damaged in an amount to be determined at trial.

**WHEREFORE**, each Plaintiff respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### COUNT III
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness)**

175. Each Plaintiff has a statutory right of publicity under Section 540.08, Florida Statutes.

176.     Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

177.     Despite the clear language of Section 540.08, Defendant published each Plaintiff's image(s), likeness and/or identity on a social media outlet, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

178.     At all times relevant to this action, each Plaintiff was and is the exclusive owner of all rights, title, and interest to her image(s), likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

179.     Defendant never sought permission or authority to use Plaintiffs' images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

180.     No Plaintiff has ever consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image(s), likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

181.     Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Plaintiffs' images, likeness and/or identity without Plaintiffs' express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

182.     Defendant had actual or constructive knowledge or consciously disregarded

the wrongfulness of its conduct, deprived each Plaintiff of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

183.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Plaintiffs' rights.

184.    Alternatively, Defendant acted negligently towards Plaintiffs in using and disseminating, without authority, Plaintiffs' images, likeness and/or identity on social media outlets to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

185.    Defendant has caused irreparable harm to Plaintiffs, their reputation and brands by attributing to Plaintiffs an adult entertainment and striptease lifestyle and activities at Defendant's strip club.

186.    Defendant has also damaged each Plaintiff as a direct and proximate result of its unauthorized use of Plaintiffs' images, likeness and/or identity without compensating Plaintiffs. Defendant's conduct has been despicable and taken in conscious disregard of Plaintiffs' rights.

**WHEREFORE**, Plaintiffs respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## COUNT IV
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness)

187.    Each Plaintiff has a common law right of publicity.

188.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Plaintiffs without express written or oral consent to such use.

189.    At all times relevant to this action, each Plaintiff was and is the exclusive owner of all rights, title, and interest to her image(s), likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

190.    Defendant published, printed, displayed and/or publicly used each Plaintiff's image(s), likeness and/or identity on its social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

191.    Defendant took these actions without Plaintiffs' permission, consent or authority. In fact, Defendant never sought permission nor authority to use Plaintiffs' images, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

192.    No Plaintiff has ever consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image(s), likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

193.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Plaintiffs' images, likeness and/or

identity without Plaintiffs' express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

194.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

195.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Plaintiffs' rights.

196.    Alternatively, Defendant acted negligently towards Plaintiffs in using and disseminating, without authority, Plaintiffs' images, likeness and/or identity on Defendant's social media outlets to promote, advertise and market Defendant's strip club and Defendant's events and activities.

197.    Defendant has caused irreparable harm to each Plaintiff, Plaintiffs' reputation and brand by attributing to Plaintiffs an adult entertainment and striptease lifestyle and activities at Defendant's strip club.

198.    Defendant has also damaged each Plaintiff as a direct and proximate result of its unauthorized use of Plaintiffs' images, likeness and/or identity without compensating Plaintiffs.

**WHEREFORE**, each Plaintiff respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## COUNT V
### (Conversion)

199.     Each Plaintiff is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image(s), likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

200.     By its acts and conduct alleged above, Defendant has converted each Plaintiff's property rights, including without limitation, Plaintiffs' images, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

201.     Plaintiffs are informed and believe and on such information allege that Defendant has refused to return Plaintiffs' property to them or pay for the deprivation of Plaintiffs' property.

202.     Further, Plaintiffs are informed and believe and thereon allege that in engaging in the conduct described above, Defendant acted with oppression and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Plaintiffs' rights.

**WHEREFORE**, each Plaintiff respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## COUNT VI
### (Unjust Enrichment)

203.     Each Plaintiff has conferred a benefit upon Defendant by virtue of Defendant's usage of each Plaintiff's image(s) without compensation.

204.    At all times relevant to this action, each Plaintiff was and is the exclusive owner of all rights, title, and interest to her image(s), likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

205.    Defendant was aware that each Plaintiff's image(s), likeness and/or identity were valuable.

206.    Defendant was aware of the resulting benefit from the usage of each Plaintiff's image(s), likeness and/or identity.

207.    Defendant has retained profits and other benefits conferred upon it by using Plaintiffs' images, likeness and/or identity to promote and advertise Defendant's business and/or Defendant's events and activities.

208.    It would be inequitable for Defendant to retain the benefits conferred upon it by using Plaintiffs' images, likeness and/or identity without paying fair value for the images.

**WHEREFORE**, each Plaintiff respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendant, jointly and severally in an amount to be determined at trial aggregated across all Plaintiffs and as follows:

1.    For damages as provided in 15 U.S.C. § 1125(a);

2.      For attorneys' fees and costs of suit, as provided for in 15 U.S.C. § 1125(a);

3.      For damages as provided in Fla. Stat. §540.08;

4.      For general damages according to proof;

5.      For special damages according to proof;

6.      For consequential damages according to proof;

7.      For reasonable attorneys' fees and costs as permitted by law;

8.      For prejudgment interest and royalties at the legal rate; and

9.      For such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated: October 18, 2018.                    Respectfully submitted,

**THE CASAS LAW FIRM, P.C.**

By:  */s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@casaslawfirm.com
Brickell Bayview Center
80 S. W. 8th Street, Suite 2000
Miami, FL 33130
Phone: (786) 671-3244
Fax: (786) 671-3243
*Attorney for Plaintiffs*